UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | * | CRIMINAL NO. 08-204(DRD) |
| | * | |
| Plaintiff, | * | |
| | * | |
| v. | * | |
| | * | |
| CARLOS ALINDATO-PEREZ (#50) | * | |
| | * | |
| Defendant. | * | |
| | * | |

**OPINION AND ORDER**

BACKGROUND

The defendant, CARLOS ALINDATO-PEREZ, hereinafter referred to as "Alindato," has requested the court to revisit the determination of the Magistrate Judge Marcos E. López, entered on September 27, 2008, denying the defendant's Motion for Reconsideration of Bail Denial, (Docket No. 804). This, the latest de novo request, was filed on October 3, 2008, (Docket 819). The Magistrate Judge Marcos E. López originally ordered Detention Pending Trial as to Alindato on June 20, 2008, (Docket No. 395). The defendant's original de novo request was filed on September 9, 2008, (Docket No. 744). The court subsequently held a hearing on October 24, 2008, (Docket No. 895). The parties have been attempting to reach a plea. Since a plea has not materialized as to co-defendant Alindato, the court is ready to rule.[1]

The court is required to perform a de novo review of the contested Detention

---

[1] Various offers and counter offers have been made to several co-defendants. Some have plead, others continue with the presumption of innocence and seek a trial.

1

Order. United States v. Tortora, 922 F.2d 880, 883 n. 4 (1st Cir. 1990).[2]

The court starts the required analysis with the indictment wherein co-defendant Alindato is charged together with one hundred and ten (110) other co-defendants in Count One of the Indictment with a conspiracy, beginning no later than in or about the year 2003, and continuing until the date of the indictment on May 27, 2008, to possess with the intent to distribute 50 grams or more of cocaine base, 1 kilogram or more of heroin, 5 kilograms or more of cocaine and 100 kilograms or more of marijuana; within 1,000 feet of a housing facility owned by a public housing authority, in violation of 21 U.S.C. 841(a)(1), 21 U.S.C. 846 and 21 U.S.C. 860. The object of the conspiracy was to distribute controlled substances at the Ernesto Ramos Antonini Public Housing Project, El Tuque Ward, Salistral Ward, Rosaly Public Housing Project and the Kennedy Public Housing Project, all for significant financial gain and profit. The defendant is specifically mentioned as being a seller who would distribute street quantity amounts of cocaine base, heroin, cocaine and marijuana and, as such, would be held accountable under conspiracy principles for the drug proceeds and the narcotics sold at the drug distribution points.[3] Defendant Alindato is also charged in Count Two of the Indictment with possession with intent to distribute 1 kilogram or more of heroin, within 1,000 feet of a housing facility owned by a public housing authority; in Count Three of the Indictment with possession with intent to distribute 50 grams or more of cocaine base, within 1,000 feet of a housing facility owned by a public housing authority; in Count Four of the Indictment with possession with intent to distribute 5 kilograms or more of cocaine, within 1,000 feet of a housing facility owned by a public

---

[2] The court also notes the illustrated opinion of District Judge Keeton in United States v. Philiphs, 732 F. Supp. 255, 2548-259 (D. Mass 1990), requiring "the court to exercise independent consideration of all facts properly before it."

[3] For sentencing purposes defendant is responsible for the amount he actually sold, handled or saw, or "for the quantity of drugs he reasonably could have foreseen to be embraced by the conspiracy." United States v. De la Cruz, 996 F. 2d 1307, 1314 (1st Cir. 1993).

2

housing authority; and in Count Five of the Indictment with possession with intent to distribute 100 kilograms or more of marijuana, within 1,000 feet of a housing facility owned by a public housing authority, all in violation of 21 U.S.C. 841 (a)(1), 21 U.S.C. 860 and 18 U.S.C. 2. The Magistrate Judge ordered the defendant to detention pending trial for being a risk of flight and a danger to the community, (Docket No. 395). The court understands that the defendant before the Magistrate Judge was not able to surpass the presumption of detention set forth under the law triggered by law under the five counts of the indictment applicable to Alindato, (Docket 395).

## THE STANDARD

The Bail Reform Act of 1984, 18 U.S.C. 3141 et seq. at § 3142(f)(1)(c) and (e), sets forth a rebuttable presumption that no condition or combination of conditions will reasonably assure the appearance of the accused as required and the safety of the community if there is probable cause established via an indictment that the person committed an offense for which the term of imprisonment of ten or more years is prescribed under the Controlled Substance Act, 21 U.S.C. 801. <u>United Sates v. Dillon</u>, 938 F.2d 1412, 1416 (1st Cir. 1991); <u>United States v. O'Brien</u>, 895 F.2d 810, 814-815 (1st Cir. 1990). In the instant case the presumption has been triggered because the quantities of drugs alleged in Count One of the Indictment (in excess of fifty grams of cocaine base, in excess of five kilograms of cocaine, in excess of one kilogram of heroin and in excess of one hundred kilograms of marijuana), mandate a ten-year minimum to life sentence.18 U.S.C. 3142(f)(1)(C). Counts Two through Five charging the same amounts also activate the presumption.

The presumption has a "significant practical effect." United States v. Jessup, 757 F.2d 378, 384 (1st Cir. 1985).[4] The presumption does not shift the burden of persuasion to the defendant, because the government retains the burden throughout. The defendant, however, once the presumption is triggered, is required to carry the burden of production. United States v. Jessup, 757 F.2d 380-384.

The presumption created is that ". . . it shall be presumed that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of the community if the judicial officer finds that there is probable cause to believe that the person committed an offense for which a maximum term of imprisonment of ten or more years is prescribed in the Controlled Substances Act, (21 U.S.C. 801 et seq.)" 18 U.S.C. 3142(e). The presumption created is therefore of "flight risk" and "danger" to the community. Jessup, 757 F.2d at 381.

Once the presumption is triggered, the defendant is required to produce "conflicting evidence" to undercut the legislative purpose of the presumption. United States v. Jessup, 753 F.2d 383. The defendant is required to produce "some evidence" to the contrary. United States v. O'Brien, 895 F.2d at 815. However, it is not merely any evidence that destroys the presumption since the "bursting bubble theory" was expressly rejected by then Chief of the First Circuit, now Supreme Court Justice, Steven Bryer, at United States v. Jessup, 757 F.2d at 382-383. The "intermediate position" adopted in Jessup requires defendant to produce "conflicting evidence" as to "danger" and "flight"[5] and then the court

---

[4] In United States v. O'Brien, 895 F.2d at 814, the court abrogated Jessup as to the standard of appellate review. The First Circuit in O'Brien adopted the appellate standard of review enunciated in United States v. Bayko, 774 F. 2d 516, 520 (1st Cir. 1985), "an independent review...tempered by deference to the district court's firsthand judgment of the situation" rather than the clearly erroneous or other highly deferential standard utilized in Jessup, 757 F. 2d at 387-388, United States v. Fortna, 769 F. 2d 243, 250 (5th Cir. 1985), United States v. Chimurenga, 760 F. 2d 400, 405 (2d. Cir. 1985), and United States v. Williams, 753 F. 2d 329, 333 (4th Cir. 1985). O'Brien, however, reiterates and follows the standard of burden shifting, presumption and of preponderance of the evidence of Jessup stated herein applicable for bail determinations at District Court level, 895 F. 2d at 815.

[5] Jessup 757. F. 2d at 383 citing the theory of Hecht and Pinzler, Rebutting Presumptions: Order Out of Chaos, 58

4

"determine[s] on which side the evidence preponderates." United States v. Jessup, 757 F.2d at 383 citing Wright v. State Accident Insurance Fund, 289 Or. 323, 613 P.2d 755,759-60 (1985).

Trial District Judges were reminded in United States v. Jessup, 757 F.2d at 384, that Congress in establishing the presumption found that "flight to avoid prosecution is particularly high among persons charged with major drug offenses." Senate Judiciary Report #225, 98th Congress 1984 p. 20, 1984 U.S. Code Cong. & Admin. News, p. 23, and further that "drug traffickers often have established ties outside the United States . . . [and] have both the resources and foreign contacts to escape to other countries." [Id].

The court in United States v. Jessup, Id., stated the following as to the method of "rebutting the presumption": "In order to 'rebut' the presumption, the defendant must produce some evidence; the magistrate or judge should then still keep in mind the fact that Congress has found that [drug] offenders, as a general rule, pose special risks of flight." Even after a defendant has produced evidence to rebut the presumption [as to both danger to the community and risk of flight],"the presumption does not disappear, but rather retains evidentiary weight - the amount depending on how closely defendants' case resembles the Congressional paradigm, Jessup, 757 F.2d at 387 - to be considered with other relevant factors." United States v. Palmer-Contreras, 835 F.2d 15, 17 (1st Cir. 1987).

Finally, in making its final determination after receiving the rebuttal pursuant to §3142 (g), the judicial officer must consider among other statutory factors "the nature and circumstance of the offense," "weight of the evidence," "history and characteristics of the person including . . . character, physical and mental condition, family history . . . past conduct" and the "danger posed to the community" by his release. United States v. Jessup, Id.

---

B.U.L. Rev. 527 (1978); Jessup (Id.) states that "the House of Judiciary adopted this sort of 'intermediate position'... ."

5

At the de novo hearing both parties proceeded via a proffer as is authorized under the case of United States v. Acevedo-Ramos, 755 F.2d 203, 208 (1st Cir. 1985)(court authorizing proceedings in bail hearings via proffer citing, The House Judiciary Committee H.R. No. 907, 91st Congress 2nd Session 182, 184 (1979)).

As stated before, the instant case is governed by the presumption of detention set forth under the Bail Reform Act based on a narcotic related indictment (conspiring to possess with the intent to distribute cocaine base in excess of 50 grams, heroin in excess of 1 kilogram, cocaine in excess of 5 kilograms and marijuana in excess of 100 kilograms within 1,000 feet of a housing facility owned by a public housing authority, Count One, and possessing with the intent to distribute the respective amounts of the aforementioned types of narcotics within 1,000 feet of a housing facility owned by a public housing authority, Counts Two, Three, Four, and Five). The court must, therefore, analyze the statutory factors required under the law. The court proceeds in **seriatim** fashion to examine the statutory criteria at 18 U.S.C.3142(g)(1),(2),(3),(4).

1. The Nature and Circumstances of the Offense.  The defendant is charged in one count of the indictment with the conspiracy to possess with the intent to distribute large amounts of narcotics using weapons, which is considered, under federal law, to be a conspiratorial crime of violence. United States v. Cirilo Muñoz, 504 F. 3rd 106, 110 (1st Cir. 2007). The defendant is specifically charged in this count with the role of a seller who would be held accountable for the drug proceeds and the narcotics sold at the drug distribution points. The defendant is further charged in four counts of the indictment with possessing with the intent to distribute large amounts of narcotics. These five counts all constitute serious offenses as they involve more than 50 grams of cocaine base, more than five kilograms of cocaine, more than 1 kilogram of heroin, and more than 100 kilograms of marijuana and all occur within 1,000 feet of a housing facility owned by a public housing authority. Adding to the seriousness of the offenses, it is also alleged that the drug transactions occurred in plain view in the presence of minors, (Docket No. 395).

Hence, the charges constitute both a serious and violent offense and the defendant is charged with the active role of being a seller of narcotics. This criteria, taken by itself, seems to favor detention although the court must examine all statutory requirements and then decide on which side the preponderance of the evidence lays.

2. The Weight of the Evidence.  The weight of the evidence is strong against the defendant Alindato because there are eleven clearly incriminating video tapes wherein the defendant is seen selling controlled substances, either in or near public housing projects, sometimes in the presence of children, (Docket No. 895). One of these video tapes shows the defendant distributing narcotics, in plain daylight and in the presence of children, at the Nestor Ramos Antonini housing project. The location of this drug transaction was within approximately 200 feet from a public elementary school, (Docket No. 895, p. 27).

Further, there are also various cooperators who will testify as to "how the drug point operates", including not only accounts of the drug transactions between the defendant and customers, both during the day and during the night, but also of the defendant's actions relating to the larger drug organization wherein the defendant "would keep large amounts of money until one of the runners from the organization would come", (Docket No. 895, p.24).[6]  The evidence is the video tapes of the defendant's drug transactions and the testimony of various cooperating witnesses. This criteria favors detention.

3. The history and characteristics of the accused. Counsel for defendant Alindato emphasizes the characteristics of the defendant, in his bail request at Docket 744, dated September 9, 2008. The defendant stresses that he has lived with his common law wife for 12 years and has three children with her. He emphasizes that he has been employed

---

[6] In conspiracy drug cases the co-defendant is not merely sentenced by the drug handled by him; the court must determine the "foreseeable amount" that defendant knew was being handled in the conspiracy. United States v. Colón Solis, 354 F.3d 101 (1st Cir. 2004). On the other hand the quantity is not necessarily the entire amount handled by all conspirators. United States v. Valencia Lucena, 988 F. 2d 228, 254-255. The general rule is, therefore, the following: "A narcotic conspirator is responsible not only for drugs he actually handled or saw, but for the full quantity of drugs he reasonably could have foreseen to be embraced by the conspiracy." United States v. De la Cruz, 996 F. 2d at 1314.

7

throughout most of his adult life and that through "hard work" and "great effort", he and his wife have been able to buy a "humble" home which could cover bail in at least $10,000 secured, (Docket No. 744). The defendant further stresses that, as to the issue of being a risk of flight, it should be noted that the defendant does not possess a passport and that all his relatives and ties are in Ponce, Puerto Rico and that he has never visited the Continental U.S..  Concerning any prior record, the defendant notes the absence of any prior drug or weapons cases and stresses that all existing cases against him are more than seven years old and occurred when he was 18 or 19 years of age. In an effort to mitigate prior domestic abuse convictions, the defendant is also willing to present testimony from his wife attesting to the fact that she has no reason to fear him, (Docket No. 744) .

The defendant has several major blemishes to his characteristics as a person. First, contrary to what defendant stated in his bail request, he does have family in and has, in fact, visited the Continental U.S., most notably living in New Jersey for seven months in 2006, (Pretrial Services Report, p. 2). He is also currently unemployed and receives bi-weekly benefits of $236. Alindato also has a prior criminal record, including an attempted aggravated burglary in 2000 and two cases of domestic violence. Defendant has also admitted to "sporadic" use of cocaine since age 23 and to consuming alcohol on weekends at a rate of "thirty beers at a sitting". Further, a urine specimen of the defendant taken on June 17, 2008 yielded positive as to opiates,  (Pretrial Services Report, p.2).

The statutory "characteristics of the person" although containing some aspects which are favorable to the defendant, are seriously eroded by the untrustworthiness demonstrated in his false assertion of never having been to the Continental U.S.; status as a convicted felon for violent offenses, including domestic abuse and attempted burglary; as well as by his alcohol abuse and drug addiction, especially since drug addiction clearly implicates him as to participating in drug transactions to satisfy his addiction. At the end, this statutory criteria favors detention.

    4. <u>The nature and gravity of the danger posed by the person's release</u>. Drug

8

trafficking standing by itself constitutes a "danger" to society, "it is clear that [harm] to society caused by narcotic trafficking is encompassed within Congress' definition of danger [to the community]." United States v. De León, 766 F.2d 77, 81 (2nd Cir. 1985). Further, information provided by Pretrial as to defendant's prior record shows that the defendant is a convicted felon for crimes of domestic abuse and attempted aggravated burglary, both of which are serious in nature. He further is covered by the statutory rebuttable presumption of "danger to the community". The defendant also carries the rebuttable presumption of "flight risk".

The defendant also carries the rebuttable presumption of "flight risk" not only because "flight to avoid prosecution is high amongst persons charged in major drug conspiracies" pursuant to Congressional findings ("flight to avoid prosecution is particularly high among . . . drug offenders") but also because he is currently unemployed and has family and other ties to the Continental U.S., having previously lived there in 2006 for seven months.

## ANALYSIS

In the instant case the court must determine, after examining all the criteria, on what side the evidence preponderates after examining the required criteria set forth under the law, 18 U.S.C. 3142(g)(1)(2)(3)(4). United States v. Jessup, 757 F.2d 383. The matter is not close. Detention is inevitably warranted. The court briefly explains.

Co-defendant Alindato can not make a reasonable assurance that he can satisfy the criteria of "community safety" as required under United States v. Tortora, 922 F.2d at 892, because his production is minimal and limited to family ties and ties to this jurisdiction. First, the family ties are seriously tarnished and undermined by his drug addiction, alcohol abuse, and prior criminal record. The characteristics of the person statutory criteria are also strongly overridden by the seriousness of the crime and the apparent strong case of the United States consisting of eleven video tapes and several cooperating witnesses. The strong evidence in the case as to him, as well as the danger he poses to the community,

9

simply overwhelms the weakened family ties overshadowed by the aforementioned major blemishes to the defendant's personal characteristics, not the least of which includes his drug addiction. Drug addiction simply shows that the defendant is constantly making drug transactions and is constantly exposed to illegal narcotics.

The defendant also fails to overcome the presumption of "dangerousness to the community" and "risk of flight," 18 U.S.C. 3142(e), Jessup, 757 F. 2d at 381. The defendant is a "flight risk" because he has ties, familial and otherwise, to the Continental U.S., having lived there for seven months in 2006, and is further covered by the Congressional concern of "flight to avoid prosecution." Jessup, 757 F. 2d 981; 18 U.S.C. 3142(2).  Further, the steeper the potential sentence, the more probable the flight risk is, especially considering the strong case of the government based on the video tapes of defendant selling drugs in the presence of minors in plain view. U.S. v. Castiello, 878 F. 2d 554 (1st Cir. 1989). Plainly expressed, the limited production of the defendant as to family and jurisdictional ties to Puerto Rico fails to override the strong showing by the United States in all other statutory criteria required to be examined under the Bail Reform Act.  The strong evidence of the United States is most notably shown in the transactions of narcotics confirmed in the video tapes.  The court understands that the criteria of "danger to the community" has been satisfied by "clear and convincing evidence" as required under United States v. Salerno, 431 U.S. 739, 750 (1987) and "risk of flight" by preponderance of the evidence under United States v. Patriarca, 948 F.2d 789, 793 (1st Cir. 1991).

The Detention Order of Hon. Magistrate Judge Marcos E. López, Docket No. 395, is, therefore,  **AFFIRMED. Co-defendant CARLOS ALINDATO-PEREZ is to remain DETAINED.**

**IT IS SO ORDERED.**

At San Juan, Puerto Rico, this 22ND day of June 2009.

s/Daniel R. Domínguez
**DANIEL R. DOMINGUEZ**
**U.S. DISTRICT JUDGE**

10